ALAN B. YUTER (SBN 101534)
ayuter@selmanbreitman.com
SELMAN BREITMAN LLP
11766 Wilshire Blvd., Sixth Floor
Los Angeles, CA 90025-6538
Telephone: 310.445.0800
Facsimile: 310.473.2525

Attorney for:
STARR INDEMNITY & LIABILITY COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, a Texas corporation,<br><br>Plaintiff,<br><br>v.<br><br>PEERLESS INSURANCE COMPANY, a New Hampshire corporation, GOLDEN EAGLE INSURANCE CORPORATION, a New Hampshire corporation, and DOES 1-10,<br><br>Defendants. | Case No.<br><br>STARR INDEMNITY & LIABILITY COMPANY'S COMPLAINT FOR DECLARATORY RELIEF, EQUITABLE SUBROGATION, AND EQUITABLE INDEMNITY |

Plaintiff Starr Indemnity & Liability Company ("Starr"), by and through its undersigned attorney, alleges as follows:

**JURISDICTION AND VENUE**

1. <u>Jurisdiction</u>. This is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest. This court has diversity jurisdiction under 28 U.S.C. § 1332. Additionally, this court has jurisdiction for providing

1

declaratory relief under 28 U.S.C. § 2201.

2. Plaintiff Starr is a corporation organized and existing under the laws of the State of Texas with its principal place of business in New York, New York.

3. Defendant Peerless Insurance Company ("Peerless") is a corporation organized and existing under the laws of the State of New Hampshire with its principal place of business in Boston, Massachusetts.

4. Defendant Golden Eagle Insurance Corporation ("Golden Eagle") is a corporation organized and existing under the laws of the State of New Hampshire with its principal place of business in Boston, Massachusetts.

5. <u>Venue</u>. A substantial part of the events allegedly giving rise to this dispute took place in San Luis Obispo County, California, making venue proper in the Western Division.

## FACTUAL ALLEGATIONS

**A. The Subject Incident**

6. This action arises from Defendants' failure to acknowledge that coverage under its business auto insurance policy, pursuant to a Department of Motor Vehicles Endorsement ("DMV Endorsement"), applies and is primary to Starr's excess insurance policy for a mutual insured in an underlying action. Starr issued a true excess policy such that Starr owes no sums until liability limits under all underlying insurance, including Defendants' business auto policy, pursuant to the DMV Endorsement, and a third party commercial general liability policy, are exhausted.

7. Starr is informed and believes and thereupon alleges that Severo Mares, Jr. ("Mares"), and Refugio Ramirez, Jr. ("Ramirez"), were traveling westbound on Highway 46 in San Luis Obispo County, California, in their employer's 2005 Chevrolet Silverado Utility truck for work on September 20, 2013.

8. Starr is informed and believes and thereupon alleges that Mares and Ramirez collided with the 1973 Caterpillar 651V Scraper (the "Scraper") of Papich Construction Company, Inc. ("Papich") on September 20, 2013.

9. Starr is informed and believes and thereupon alleges that the September 20, 2013 incident occurred when the Scraper was used in the course and scope of Papich's business for which a motor carrier permit is required.

10. A suit arising out of the September 20, 2013 incident was filed in the California Superior Court, San Luis Obispo County, Case No. CV138294, and is styled *Mares v. Bogunda* (the "Underlying Action"). The Underlying Action is ongoing.

11. Starr is informed and believes and thereupon alleges that Papich tendered the Underlying Action to Papich's insurers: National Union Fire Insurance Company of Pittsburgh, PA, the commercial general liability insurer; Defendants, the business auto insurer; and Starr, the excess insurer.

///

///

3

B.  **The Policies**

1.  **National Union's Commercial General Liability Policy**

12.  Starr is informed and believes and thereupon alleges that third party insurer National Union Fire Insurance Company of Pittsburgh, PA ("National Union") issued commercial general liability policy number 3023433 to Papich, with a policy period from January 25, 2013, to January 25, 2014 (the "CGL Policy").

13.  Starr is informed and believes and thereupon alleges that the CGL Policy provides a $2,000,000 each occurrence liability limit.

2.  **Defendants' Business Auto Policy**

14.  Defendants issued business auto policy number BA 8291564 to Papich, with a policy period from July 1, 2013, to July 1, 2014 ("Defendants' Auto Policy").

15.  Defendants' Auto Policy provides a $1,000,000 liability limit.

16.  Defendants' Auto Policy includes a DMV Endorsement that states the insurer must pay, "consistent with the limits it provides," any legal liability for bodily injury, death or property damage arising out of "use of any vehicle(s) for which a motor carrier permit is required, whether or not such vehicle(s) is described in the attached policy."  The DMV Endorsement also states, "This insurance policy covers all vehicles used in conducting the service performed by the insured for which a motor carrier permit is required whether or not said vehicle(s) is listed in the

insurance policy":

This Endorsement shall be attached to and made a part of all policies insuring motor carriers of property required to obtain a permit pursuant to the Motor Carriers of Property Permit Act, commencing with California Vehicle Code section 34600. The purpose of this Endorsement is to assure compliance with the Act and related rules and regulations.

Insurer agrees to each of the following:

- The coverage provided by the endorsement excludes any costs of defense or other expense that the policy provides.

- To pay, consistent with the minimum insurance coverage required by California Vehicle Code Section 34631.5, and consistent with the limits it provides herein, any legal liability of insured for bodily injury, death, or property damage arising out of the operation, maintenance, or use of any vehicle(s) for which a motor carrier permit is required, whether or not such vehicle(s) is described in the attached policy.

- No provision, stipulation, or limitation contained in the attached policy or any endorsement shall relieve insurer from obligations arising out of this Endorsement or the Act, regardless of the insured's financial solvency, indebtedness or bankruptcy.

- The Certificate of Insurance shall not be canceled on less than thirty (30) days notice from the Insurer to the DMV, written on an authorized Notice of Cancellation form and that the thirty (30) day/period commences to run from the date the Notice of Cancellation was actually received at the office of the California Department of Motor Vehicles, Motor Carrier Services Branch, in Sacramento, California.

- To furnish DMV with a duplicate original of the referenced policy, DMV authorized endorsement, and all other related endorsements and documentation upon request.

- Except as specified in this endorsement, the terms, conditions, and limitations of this policy remain in full force and effect. This endorsement shall not prevent insurer from seeking reimbursement from insured for any

payment made by insurer solely on account of the provisions herein.

Insurer certifies to each of the following:

This insurance policy covers all vehicles used in conducting the service performed by the insured for which a motor carrier permit is required whether or not said vehicle(s) is listed in the insurance policy.

### 3. Starr's Excess Policy

17. Starr issued excess policy number SISCCCL001740913 to Papich, with a policy period from January 25, 2013, to January 25, 2014 ("Starr's Excess Policy").

18. Starr's Excess Policy provides a $10,000,000 each occurrence limit, and a $10,000,000 aggregate limit.

19. The Schedule of Underlying Insurance in Starr's Excess Policy lists the CGL Policy and Defendants' Auto Policy.

20. The insuring agreement in Starr's Excess Policy states in part:

> A. We will pay on behalf of the Insured, the "Ultimate Net Loss" in excess of the "Underlying Insurance" as shown in ITEM 5. of the Declarations, that the Insured becomes legally obligated to pay for loss or damage to which this insurance applies and that takes place in the Coverage Territory. Except for the terms, definitions, conditions and exclusions of this Policy, the coverage provided by this Policy shall follow the terms, definitions, conditions and exclusions of the applicable First Underlying Insurance Policy(ies) shown in ITEM 5.A. of the Declarations.
>
> B. Regardless of any other warranties, terms, conditions, exclusions or limitations of this Policy, if any applicable Underlying Insurance Policy(ies) does not cover "Ultimate Net Loss" for reasons other than exhaustion of its limit of liability by payment of claims or suits, then this Policy will not cover such "Ultimate Net Loss".

21. The "other insurance" clause in Starr's Excess Policy, which establishes how loss is apportioned among insurers when more than one policy covers the same loss, states in part:

> If other insurance applies to "Ultimate Net Loss" that is also covered by this Policy, this Policy will apply excess of, and will not contribute to, the other insurance. Nothing herein will be construed to make this Policy subject to the terms, conditions and limitations of such other insurance. However, other insurance does not include:
>
> 1. "Underlying Insurance";
>
> 2. Insurance that is specifically written as excess over this Policy; or
>
> 3. Insurance held by a person(s) or organization(s) qualifying as an additional insured in "Underlying Insurance", but only when the written contract or agreement between you and the additional insured requires a specific limit of insurance that is in excess of the Underlying Limits of Insurance. However, the Limits of Insurance afforded the additional insured in this paragraph shall be the lesser of the following:
>
>    a. The minimum limits of insurance required in the contract or agreement between you and the additional insured; or
>
>    b. The Limits of Insurance shown in the Declarations of this Policy.
>
> Other insurance includes any type of self-insurance or other mechanism by which an Insured arranges for the funding of legal liabilities.

C. **Defendants' Failure To Acknowledge Coverage For Papich Under The DMV Endorsement In The Underlying Action**

22. Starr is informed and believes and thereupon alleges that National Union is providing Papich with a defense in the Underlying Action.

23. Starr is informed and believes and thereupon

7

alleges that National Union does not contest its CGL Policy applies and is primary to Starr's Excess Policy for any coverage obligations owed to Papich in the Underlying Action.

24. Starr has followed up with Defendants continuously about Defendants' coverage obligations to Papich in the Underlying Action under California law, showing Defendants' Auto Policy, pursuant to the DMV Endorsement, applies and is primary to Starr's Excess Policy.

25. Starr is informed and believes and thereupon alleges that, to date, Defendants have not taken a coverage position in the Underlying Action, despite having coverage obligations to Papich pursuant to the DMV Endorsement in Defendants' Auto Policy.

26. Starr is informed and believes and thereupon alleges that, to date, Defendants have not issued a reservation of rights letter or disclaimer letter to Papich regarding the Underlying Action.

27. Starr is informed and believes and thereupon alleges that, to date, Defendants have refused to participate in any settlement discussions regarding the Underlying Action, including but not limited to attending mediations.

28. Starr is informed and believes and thereupon alleges that, to date, Defendants have not acknowledged that Defendants' Auto Policy, pursuant to the DMV Endorsement, applies and is primary to Starr's Excess Policy for any coverage obligations owed to Papich in the

Underlying Action.

29. Starr is informed and believes and thereupon alleges that, to date, Defendants have not acknowledged that Starr owes no obligation to Papich in the Underlying Action until liability limits under Defendants' Auto Policy, pursuant to the DMV Endorsement, and the CGL Policy are exhausted.

### FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF

**(Defendants' Auto Policy, Pursuant To The DMV Endorsement, Applies And Is Primary To Starr's Excess Policy In The Underlying Action)**

30. Starr realleges and incorporates by this reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

31. An actual controversy has arisen and now exists between Starr and Defendants concerning their respective rights and obligations under the Defendants' Auto Policy, including the DMV Endorsement, and Starr's Excess Policy, in that Starr contends, and Defendants disagree, that:

    a. Defendants' Auto Policy, pursuant to the DMV Endorsement, applies and is primary to Starr's Excess Policy for any coverage obligations owed to Papich in the Underlying Action; and

    b. Starr has no coverage obligation to Papich in the Underlying Action until the liability limits in Defendants' Auto Policy and the CGL Policy are exhausted.

32. As Starr has no speedy or adequate remedy at law,

Starr requests that this court declare and decree Defendants' Auto Policy, pursuant to the DMV Endorsement, applies and is primary to Starr's Excess Policy for any coverage obligations owed to Papich in the Underlying Action, and Starr has no coverage obligation to Papich in the Underlying Action until the liability limits in Defendants' Auto Policy and the CGL Policy are exhausted.

### SECOND CAUSE OF ACTION FOR EQUITABLE SUBROGATION

33. Starr realleges and incorporates by this reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

34. In contravention of applicable law, Defendants have not acknowledged that Defendants' Auto Policy, pursuant to the DMV Endorsement, applies and is primary to Starr's Excess Policy for any coverage obligations owed to Papich in the Underlying Action, and Starr has no coverage obligation to Papich in the Underlying Action until the liability limits in Defendants' Auto Policy and the CGL Policy are exhausted.

35. As a result of Defendants' wrongful conduct, if Starr contributes to any judgment or settlement against Papich in the Underlying Action that falls within the $1,000,000 layer of insurance under Defendants' Business Auto Policy, pursuant to the DMV Endorsement, Starr is entitled to recover Starr's contribution from Defendants.

36. As a result of Defendants' wrongful conduct, if Defendants fail to settle any judgment or settlement against Papich in the Underlying Action within the

$1,000,000 layer of insurance under Defendants' Business Auto Policy, pursuant to the DMV Endorsement, Starr is entitled to recover any additional sums Starr pays as a result of Defendants' failure to settle.

37. Pursuant to principles of equitable subrogation, Starr may assert in this action all claims that the insured could have asserted against Defendants.

### THIRD CAUSE OF ACTION FOR EQUITABLE INDEMNITY

38. Starr realleges and incorporates by this reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

39. Defendants are responsible for providing a $1,000,000 layer of insurance under the DMV Endorsement in Defendants' Auto Policy that applies and is primary to the $10,000,000 liability limit of excess insurance under Starr's Excess Policy.

40. Defendants abdicated their duty to provide indemnity for Papich in the Underlying Action by refusing to acknowledge Defendants' Auto Policy, pursuant to the DMV Endorsement, applies and is primary to Starr's Excess Policy for any coverage obligations owed to Papich in the Underlying Action, and Starr has no coverage obligation to Papich in the Underlying Action until the liability limits in Defendants' Auto Policy and the CGL Policy are exhausted.

41. Therefore, equity requires that Defendants fully indemnify Starr for all payments within the $1,000,000 layer of insurance under the DMV Endorsement in Defendants'

Auto Policy that Starr will expend in any settlement or judgment of the Underlying Action against Papich for which Defendants are wholly responsible, in an amount which will be proven at trial.

**PRAYER FOR RELIEF**

Wherefore, Starr prays for relief as follows:

1. For a declaration that Defendants' Auto Policy, pursuant to the DMV Endorsement, applies and is primary to Starr's Excess Policy for any coverage obligations owed to Papich in the Underlying Action.

2. For a declaration that Starr has no coverage obligation to Papich in the Underlying Action until the liability limits in Defendants' Auto Policy and the CGL Policy are exhausted.

3. Recovery of Starr's contribution to any judgment or settlement against Papich in the Underlying Action that falls within the $1,000,000 layer of insurance under Defendants' Business Auto Policy, pursuant to the DMV Endorsement, if Defendants fail to settle any such judgment or settlement within their $1,000,000 layer.

4. Recovery of any additional sums Starr pays as a result of Defendants' failure to settle any judgment or settlement against Papich in the Underlying Action within the $1,000,000 layer of insurance under Defendants' Business Auto Policy, pursuant to the DMV Endorsement, if Defendants fail to settle any such judgment or settlement within their $1,000,000 layer.

5. For costs of suit herein.

1       6.   For such other and further relief as this Court
2   may deem just and proper.
3   DATED: January 27, 2015    SELMAN BREITMAN LLP

By: _____
ALAN B. YUTER
Attorney for Plaintiff
STARR INDEMNITY & LIABILITY COMPANY

617508.1 3118.37507