| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | JS-6 |

CIVIL MINUTES -- GENERAL

| | | |
|---|---|---|
| Case No. | **CV 15-643-JFW (JCx)** | Date:  June 22, 2015 |

Title:    Starr Indemnity and Liability Company -v- Peerless Insurance Company, et al.

**PRESENT:**

   **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Shannon Reilly<br>**Courtroom Deputy** | None Present<br>**Court Reporter** |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:**<br>None | **ATTORNEYS PRESENT FOR DEFENDANTS:**<br>None |

**PROCEEDINGS (IN CHAMBERS):**     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS PEERLESS INSURANCE COMPANY AND GOLDEN EAGLE INSURANCE CORPORATION'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO STAY [filed 5/18/15; Docket No. 25]

On May 18, 2015, Defendants Peerless Insurance Company and Golden Eagle Insurance Corporation (collectively, "Defendants") filed a Motion to Dismiss, or in the Alternative, Motion to Stay ("Motion").  On May 22, 2015, Plaintiff Starr Indemnity & Liability Company ("Plaintiff") filed its Opposition.  On June 1, 2015, Defendants filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's June 15, 2015 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.     Factual and Procedural Background**

On September 20, 2013, at approximately 5:43 a.m., Severo Mares, Jr. ("Mares") and Refugio Ramirez, Jr. ("Ramirez") were traveling westbound on Highway 46 in San Luis Obispo County, California in a 2005 Chevrolet Silverado utility truck when they collided with the 1973 Caterpillar 651V Scraper (the "Scraper") owned by Papich Construction Company, Inc. ("Papich").  The Scraper was allegedly being driven across Highway 46 without operational lights by Ryan Bogunda ("Bogunda"), an employee of Papich.  The Scraper failed to yield to all eastbound and westbound traffic, and, instead, it blocked traffic and allegedly caused a head on collision between the Chevrolet and the Scraper, causing injuries to Mares and Ramirez.  On November 1, 2013, Mares and Ramirez filed an action in San Luis Obispo Superior Court, entitled *Mares v. Bogunda*, San Luis Obispo County Superior Court Case No. CV138294 (the "Underlying Action"), seeking damages for the injuries they suffered in the collision with the Scraper.  In depositions in the

Underlying Action, Bodunga and another deponent, Travis Mankins, testified that, at the time of the collision, a pickup truck owned by Papich was used to light the path for the Scraper, which lacked operational lights.

Papich is insured under Defendants' business auto insurance policy, BA 8291564, for the policy period of July 1, 2013 to July 1, 2014 (the "Auto Policy"), and it provides up to $1,000,000 in liability coverage for up to 137 autos owned by Papich. Papich is also insured under Plaintiff's excess insurance policy, SISCCCL001740913, for the policy period of January 25, 2013 to January 25, 2014 (the "Excess Policy"), and it provides $10,000,000 in coverage. Defendants have refused to take a coverage position under the Auto Policy in the Underlying Action, despite Plaintiff's belief that Defendants have an obligation to provide coverage to Papich under the Auto Policy, and that Defendants' coverage obligation is primary to Plaintiff's Excess Policy.

In the original Complaint filed on January 28, 2015, Plaintiff alleged that Defendants owe Papich a coverage obligation under the Auto Policy in the Underlying Action that is primary to Plaintiff's Excess Policy because the Scraper was covered under the Auto Policy. On May 4, 2015, Plaintiff filed its First Amended Complaint. In its First Amended Complaint, Plaintiff re-alleged that Defendants owe a coverage obligation to Papich in the Underlying Action because the Scraper was covered, and added a new allegation that there was coverage because of the involvement of Papich's pickup truck on the night of the accident. Specifically, Plaintiff alleged that, even if the Scraper was not a covered vehicle, the pickup truck was covered under the Auto Policy.

In their Motion, Defendants seek to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Alternatively, Defendants seek to stay this action pending resolution of the Underlying Action.

## II.     Legal Standard

### A.     Motion to Dismiss

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of

fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### B.   Motion to Stay a Declaratory Relief Action

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Based on the statute's "permissive language," district courts have broad "discretion to dismiss a federal declaratory judgment action when 'the questions in controversy . . . can better be settled in' a pending state court proceeding." *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) (*quoting Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995) (holding that review of district court "decisions about the propriety of hearing declaratory judgment actions" is "for abuse of discretion"). "However, there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (*en banc*).

In deciding whether to stay or dismiss an action for declaratory relief, a district court should consider the three factors set forth in the Supreme Court's decision in *Brillhart*. *See R.R. St. & Co.*, 656 F.3d at 975. Specifically, a district court should (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation. *Id.* (*quoting Dizol*, 133 F.3d at 1225). The *Brillhart* factors are the "philosophic touchstone" of the *Wilton/Brillhart* analysis. *Id.* In addition, the Ninth Circuit has suggested other considerations that may weigh in favor of a district court's decision to dismiss or stay an action for declaratory relief: whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a res judicata advantage; whether the use of a declaratory action will result in entanglement between the federal and state court systems; the convenience of the

parties; and the availability of and relative convenience of other remedies. *Dizol*, 133 F.3d at 1225 n.5 (*quoting Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 145 (9th Cir. 1994) (Garth, J., concurring)). Thus, "the district court must balance concerns of judicial administration, comity, and fairness to the litigants." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005) (internal quotation marks omitted).

## III.   Discussion

### A.   Motion to Dismiss

In their Motion to Dismiss the First Amended Complaint, Defendants argue that Plaintiff has failed to state a claim for declaratory relief. Defendants also argue that Plaintiff has failed to state claims for equitable subrogation or equitable indemnity because Plaintiff has not yet paid any claim arising out of the Underlying Action.

#### 1.   Plaintiff's First Cause of Action for Declaratory Relief.

Federal courts sitting in diversity apply the substantive law of the forum state. *See Clark v. Allstate Insurance Co.*, 106 F.Supp.2d 1016, 1018 (S.D. Cal. 2000) ("It is well-established that federal courts sitting in diversity must apply state substantive law and federal procedural rules," *citing Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F.Supp.2d 980, 986 (S.D. Cal. 1999), and *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Therefore, federal courts have generally, but not consistently, applied California's declaratory judgment statute, California Civil Procedure Code § 1060, rather than the federal statute, 28 U.S.C. § 2201, when sitting in diversity. *See, e.g., Valley Forge Ins. Co. v. APL Co. Pte.*, 2010 WL 960341 (C.D. Cal. Mar. 16, 2010) (collecting cases and concluding that federal courts generally apply "§ 1060 rather than the federal [statute] when sitting in diversity"). In this case, neither party has addressed whether Section 1060 applies, but, ultimately, the Court does not find any meaningful difference between the state and federal statutes because the standard for pleading a declaratory relief claim under either federal or state law is substantially similar.

Under California law, "'[t]he purpose of a declaratory judgment [under § 1060] is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation.'" *Meyer v. Sprint Spectrum L. P.*, 45 Cal. 4th 634, 647 (2009) (*quoting Maguire v. Hibernia Savings & Loan*, 23 Cal. 2d 719, 729 (1944)). "'Another purpose is to liquidate doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation.'" *Id.* (*quoting Bess v. Park*, 132 Cal. App. 2d 49, 52 (1955)). "'One test of the right to institute proceedings for declaratory judgment is the necessity of present adjudication as a guide for plaintiff's future conduct in order to preserve his legal rights.'" *Id.* (*quoting American Telephone & Telegraph Co. v. California Bank*, 59 Cal. App. 2d 46, 55 (1943)). The federal standard is virtually identical. In general, for a court to exercise jurisdiction under the Declaratory Judgment Act, there must be a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality" (*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)), which has "crystallized to the point that there is a specific need" for a declaratory judgment. *J.N.S., Inc. v. Indiana*, 712 F.2d 303, 305 (7th Cir.1983). In the insurance context, an excess insurer may sue a primary insurer for declaratory relief to determine each party's coverage obligations. *See Sequoia Ins. Co. v. Royal Ins. Co. of Am.*, 971 F.2d 1385, 1391–92 (9th Cir. 1992); *see also Liberty Mutual Ins. Co. v. Indian*

*Harbor Ins. Co.*, 2011 WL 2940296 (S.D. Cal. Jul 19, 2011).

In this case, the Court concludes that Plaintiff has stated a sufficient declaratory relief claim for relief under either California Civil Procedure Code § 1060 or 28 U.S.C. § 2201. Accordingly, Defendants' Motion to Dismiss is denied with respect to Plaintiff's first cause of action for declaratory relief.

### 2. Plaintiff's Second Cause of Action for Equitable Subrogation and Third Cause of Action for Equitable Indemnity.

With respect to Plaintiff's second cause of action for equitable subrogation and third cause of action for equitable indemnity, Plaintiff admits in its Opposition that it is seeking relief "prospectively" and only if, as a result of Defendants' alleged wrongful conduct in refusing to provide coverage to Papich, Plaintiff contributes to a judgment or settlement of the Underlying Action within the $1,000,000 coverage limits of Defendants' Auto Policy. Opposition, 9:24-10:13. Plaintiff also argues that it "obviously does not seek recovery of damages it has not yet incurred as a result of Defendants' breaches." *Id.*, 10:14-15.

Subrogation "allows an insurer that paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss." *Maryland Cas. Co. v. Nationwide Mutual Ins. Co.*, 81 Cal. App. 4th 1082, 1088–89 (2000). Thus, although the primary insurer owes no direct duty of settlement within policy limits to the excess insurer, California recognizes the right of an excess insurer who has fully paid the insured's judgment to bring an action against the primary insurer for wrongful refusal to settle based on the theory of equitable subrogation. *Commercial Union Assurance Cos. v. Safeway Stores Inc.*, 26 Cal.3d 912 (1980). The essential elements for a subrogation claim against an insurer include: 1) that the insured has suffered a loss for which the defendant insurer is liable; 2) that the claimed loss was one which the insurer seeking subrogation was not primarily liable; 3) that the insurer has compensated the insured for the loss for which the defendant insurer is primarily liable; 4) that the insurer has not paid the claim as a volunteer; 5) that the insured has an existing, assignable cause of action against the defendant insurer which the insured could have asserted for his own benefit had he not been compensated for the loss by the insurer; 6) that the subrogating insurer has suffered damage by the defendant insurer's acts or omissions; 7) that justice requires on equitable grounds that the loss be entirely shifted from the subrogating insurer to the defendant insurer; and 8) that the subrogating insurer's damages are liquidated in nature. *Ireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal App. 4th 1279, 1292–93 (1998).

Equitable indemnity "'applies in cases in which one party pays a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter party.'" *Phoenix Ins. Co. v. United States Fire Ins. Co.*, 189 Cal. App. 3d 1511, 1526 (1987). Thus, the elements of a cause of action for equitable indemnity are: (1) a showing of fault on the part of the indemnitor; and (2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible. *Gouvis Engineering v. Sup. Ct.*, 37 Cal. App. 4th 642, 646 (1995).

With respect to both Plaintiff's equitable subrogation claim and equitable indemnity claim, Plaintiff has failed to allege, and admits that it cannot allege, that it has suffered any damages as a

result of Defendants' alleged breaches, which is a necessary element of both claims. Accordingly, Defendants' Motion to Dismiss is granted with respect to Plaintiff's second cause of action for equitable subrogation and third cause of action for equitable indemnity. Plaintiff's second cause of action for equitable subrogation and third cause of action for equitable indemnity are dismissed without prejudice.

### B. Motion to Stay

The Court finds that application of the *Brillhart* factors, as well as the considerations set forth in *Kearns*, weigh in favor of staying the present action pending resolution of the Underlying Action. Although there is no indication that Plaintiff is forum shopping, the Court concludes it is appropriate to stay this action in order to avoid determining state law issues unnecessarily and to avoid duplicative litigation.

As to the first *Brillhart* factor, the Court notes that federal jurisdiction exists in this matter solely due to diversity of citizenship. Thus, the only issue to be addressed is whether Plaintiff is entitled to declaratory relief with respect to insurance coverage, which is governed solely by state law. *See Cont'l Ins. Co. v. Hexcel Corp.,* 2013 WL 1501565, at *3 (N.D. Cal. Apr. 10, 2013) (explaining that plaintiffs' request for "a declaration regarding the scope of insurance coverage" was "governed solely by applicable state law"). Where, as in this case, the Court's ruling on Plaintiff's declaratory relief claims will necessarily and exclusively involve application of California insurance law, and because Plaintiff is in federal court based on diversity of citizenship, "the federal interest in this matter is at its nadir." *Md. Cas. Co. v. Witherspoon*, 993 F.Supp.2d 1178, 1183 (C.D .Cal. 2014); *see also Dizol*, 133 F.3d at 1232 (underscoring the importance of allowing states to protect "complex state administrative processes from undue federal interference," such as the "wholly state regulated insurance industry"). Therefore, the Court concludes that the first *Brillhart* factor – avoiding the needless determination of state law – favors a stay here. *See Witherspoon*, 993 F.Supp.2d at 1184 (finding "that the *Brillhart* policy of avoiding an unnecessary declaration of state law weighs against exercising discretionary jurisdiction").

As to the third *Brillhart* factor, the Court finds that whether declaratory relief is appropriate might well turn on issues that will be determined in the Underlying Action. For example, whether the accident resulted from Papich's ownership, maintenance, or use of the pickup truck, as alleged by Plaintiff in this action, is an issue that has yet to be decided in the Underlying Action. Thus, proceeding with this action poses the risk of inconsistent factual determinations. Therefore, the Court concludes that the third *Brillhart* factor – avoiding duplicative litigation – also favors a stay. *See id.* (holding that the "overlap in issues weighs heavily against allowing Plaintiff's declaratory judgment action to go forward, because it entangles the Court with the underlying state court action, as well as results in duplicative litigation").

In addition, the *Kearns* consideration regarding the entanglement between the federal and state court systems weighs strongly in favor of staying the instant action. *See Witherspoon*, 993 F.Supp.2d at 1185 (expressing "great concern that exercising jurisdiction over this Action will result in entanglement between the federal and state court systems"). Furthermore, there is a significant risk of prejudice to Papich, the insured, if a stay is not issued. *See Md. Cas. Co.*, 993 F.Supp.2d at 1186 (discussing that the purpose of issuing stays in declaratory relief actions is "to eliminate risk of inconsistent factual determinations that could prejudice the insured" and holding that a

declaratory relief action "must be stayed if . . . proceeding . . . could prejudice the insured in the trial in the underlying action"). Finally, staying this action pending resolution of the Underlying Action may enhance the possibility of a global settlement. Therefore, the Court finds that the interests of judicial economy, comity, and fairness to the parties weigh in favor of staying this action.[1]

### IV.     Conclusion

For all the foregoing reasons, Defendants' Motion is **GRANTED in part**, and **DENIED in part**. Defendants' Motion to Dismiss is **DENIED** with respect to Plaintiff's first cause of action for declaratory relief, and **GRANTED** with respect to Plaintiff's second cause of action for equitable subrogation and third cause of action for equitable indemnity. Plaintiff's second cause of action for equitable subrogation and third cause of action for equitable indemnity are **DISMISSED without prejudice**. Defendants' Motion to Stay is **GRANTED**. All dates presently set in this action are **VACATED**. Every 60 days from the date of this Order, the parties shall file a Joint Status Report, advising the Court of the status of the Underlying Action. The parties shall also file a Joint Status Report within 5 days of the resolution of the Underlying Action.

IT IS SO ORDERED.

---

[1] In addition, the Court concludes that a stay is appropriate under California law. Under California law, "[t]o eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action." *Montrose Chem. Corp. v. Sup. Ct.*, 6 Cal. 4th 287 (1993).